LOCAL UNION NO. 336, etc., Plaintiff,

v.

DETROIT GASKET AND MANUFAC-
TURING COMPANY, Defendant.

No. CIV–2–80–52.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Jan. 7, 1981.

Leonard G. Webb, Knoxville, Tenn., for plaintiff.

Lewis R. Hagood, Knoxville, Tenn., for defendant.

MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action by a labor organization to compel an employer to arbitrate an unresolved grievance in accordance with the procedures required by a collective bargaining agreement of the parties. 29 U.S.C. § 185(a). A magistrate of this district recommended that the motion of the defendant for a summary judgment, Rule 56(b), Federal Rules of Civil Procedure, be granted, on the ground that such grievance was not arbitrable. 28 U.S.C. § 636(b)(1)(B).

**40**

Having considered the timely written objections of the plaintiff to such recommendation, the recommendation of the magistrate hereby is REJECTED. 28 U.S.C. § 636(b)(1).

Mrs. Louise Starnes, an employee of the defendant, filed a grievance on September 12, 1979, complaining of the defendant's calculation of her comparative seniority. Specifically, Mrs. Starnes alleged that the defendant had failed to credit her for employment by it from April, 1960 until June 1, 1965. On the latter date, she took-off for some 4½ months to bear a child.

According to her grievance, her seniority should have been calculated so as to have included this 5-year period during which she had been employed by the defendant. Instead, according to the claim of Mrs. Starnes, the defendant improperly determined that her seniority commenced when she returned to work after her brief absence.

The magistrate characterized Mrs. Starnes' grievance as one seeking "retroactive seniority". This, he concluded, was not covered by any provision of the pertinent agreement. Since the arbitration clause of that agreement was applicable only to grievances, alleging its violation or violation of working conditions specifically covered by it, and since retroactive seniority was not mentioned in the agreement, the magistrate felt that Mrs. Starnes' grievance was not subject to the arbitration process. Therefore, reasoned the magistrate, the defendant was entitled to a summary judgment. The Court disagrees completely.

■ It is well-settled "* * * that the arbitration duty is a creature of the collective-bargaining agreement and that a party cannot be compelled to arbitrate any matter in the absence of a contractual duty to do so. * * *" *Nolde Bros. Inc. v. Bakery Workers* (1977), 430 U.S. 243, 250–251, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300, 308[4], rehearing denied (1977), 430 U.S. 988, 97 S.Ct. 1689, 52 L.Ed.2d 384. The obligation to arbitrate a dispute does not arise solely from the operation of law; the law requires a party to submit to arbitration only if that process has been adopted by the parties. *Gateway Coal Co. v. Mine Workers* (1974), 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583, 590[1].

■ Nevertheless, there exists a well-established federal labor-policy favoring arbitration as the means of resolving disputes arising between employers and employees. *Nolde Bros. Inc. v. Bakery Workers, supra,* 430 U.S. at 254, 97 S.Ct. at 1073, 51 L.Ed.2d at 310[8]. This strong federal policy, favoring the settlement of labor disputes by arbitration, is firmly grounded in congressional command, 29 U.S.C. § 173(d). *Gateway Coal Co. v. Mine Workers, supra,* 414 U.S. at 377, 94 S.Ct. at 636, 38 L.Ed.2d at 592[3].

■ Consequently, although the parties are bound to arbitrate only those disputes they have agreed to arbitrate, all doubts or ambiguities must be resolved in favor of arbitration. *Controlled Sanitation Corp. v. Dist. 128, Etc.,* C.A.3d (1975), 524 F.2d 1324, 1328[2], certiorari denied (1976), 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319. "* * * In effect, there is a presumption in favor of arbitrability which should be dispelled only when the agreement explicitly exempts certain conduct from arbitration or when the terms of the agreement, read as a whole, clearly envision non-arbitrability. * * *" *Idem.*

Herein, the role of this Court is strictly limited. Its sole function is to determine "* * * whether the subject matter of the dispute is one which the parties have agreed to submit to arbitration. * * *" *Amalgamated Clothing Workers v. Ironall Factories Co.,* C.A. 6th (1967), 386 F.2d 586, 590[5].

The merits of the underlying dispute are "* * * outside the purview of judicial examination or consideration. * * *" *Chambers v. Beaunit Corporation,* C.A. 6th (1968), 404 F.2d 128, 131[7]. In making this limited determination, the Court must be guided by the mandate that:

\* \* \* \* \* \*

"Apart from matters that the parties specifically exclude, all of the questions

on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. * * * An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. * * * In the absence of any express provision excluding a particular grievance from arbitration, * * * only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

* * * * * *

*United Steelworkers v. Warrior & G. Nav. Co.* (1960), 363 U.S. 574, 581, 583–584, 584–585, 80 S.Ct. 1347, 1352, 1353–1354, 4 L.Ed.2d 1409, 1417, 1417–1418, 1419 (headnotes 15, 19, 28).

Although the magistrate viewed this grievance of Mrs. Starnes as concerning "retroactive seniority", which was not covered by anything in the agreement, a plausible argument can be made that what her grievance actually disputed was the defendant's present calculation of her seniority, a matter that might be covered by the agreement. "* * * In the area of labor relations, 'seniority' is a term that connotes length of employment. * * *" *California Brewers Assn. v. Bryant* (1980), 444 U.S. 598, 605, 100 S.Ct. 814, 819, 63 L.Ed.2d 55, 64.

"* * *Every seniority system must include rules that delineate how and when the seniority time clock begins ticking, as well as rules that specify how and when a partic-

ular person's seniority may be forfeited. * * *" *Ibid.*, 444 U.S. at 607, 100 S.Ct. at 820, 63 L.Ed.2d at 64–65. In their current collective bargaining agreement, the parties defined "seniority" to mean "* * * length of continuous service with the Company * * *" subject to certain specified provisions affecting the loss of seniority. Article XV, § B. It was provided also that an employee's seniority would terminate when he or she "* * * voluntarily quits. * * *" Article XV, § E. 1.

■ Apparently, Mrs. Starnes claims that the defendant interpreted these provisions in such a way that an employee who left her employment temporarily for child-bearing purposes was considered to have voluntarily quit her job, thereby terminating her seniority, and, upon returning to work, her seniority commenced anew. Mrs. Starnes' grievance can be construed as disputing this interpretation of the collective bargaining agreement, and as contending that, under its seniority provisions, her continuous service with the company was not interrupted by her brief absence: therefore, that she had not thereby voluntarily quit her job.

Considered in this light, then, the grievance of Mrs. Starnes, although inartfully drafted, could be construed reasonably as alleging a violation by the defendant of Article XV of the current collective bargaining agreement. Of course, whether that substantive article of the agreement would have any application to the matters of which Mrs. Starnes complains goes to the merits of the grievance and cannot be considered by this Court. Suffice it to say, that, in as much as the grievance could be construed as alleging a violation of the current agreement, it is subject to the arbitration procedure set-forth therein.

This Court is not able to say with positive assurance that the arbitration clause of the agreement is not susceptible of an interpretation that covers the dispute raised by the grievance of Mrs. Starnes. Although, as was pointed-out by the magistrate, matters

relating to Mrs. Starnes' grievance had been discussed in contract-negotiations between the parties, but were never incorporated into the formal agreement, the Court thinks that such does not constitute the most forceful evidence of a purpose to exclude the present dispute from arbitration. *See United Steelworkers v. Warrior & G. Nav. Co., supra*, 363 U.S. at 585, 80 S.Ct. at 1354, 4 L.Ed.2d at 1419 (headnote 28).

An employee's seniority can be "* * * measured in a number of ways * * *," *Teamsters v. United States* (1977), 431 U.S. 324, 355, 97 S.Ct. 1843, 1865, n.41, 52 L.Ed.2d 396, 427, n. 41, and undoubtedly differences of opinion can, and will, arise over the measurement of the seniority of any given employee. " * * * Disputes over seniority provisions contained in a collective bargaining agreement have generally been held arbitrable where the arbitration clause of the agreement is broad in scope and nothing in the agreement specifically excludes such disputes from the grievance and arbitration procedure. * * *" 48A Am.Jur.(2d) 315–316, Labor and Labor Relations § 1892, citing *inter alia United Steelworkers v. American Mfg. Co.* (1960), 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403.

The arbitration clause involved herein appears broad in scope, and nothing in the agreement excludes specifically disputes over the seniority provisions from the arbitration procedure chosen voluntarily by the parties. The agreement did exclude certain other disputes from the arbitration process, and the Court must assume that, had the parties desired also to exclude seniority disputes, they would have done so with facility.

The Court has considered also the other grounds urged by the defendant in support of its motion for summary judgment and found they lack merit. This action is not barred by whatever might be the applicable statute of limitations.* The sole claim of the plaintiff herein is that the defendant breached the agreement by refusing to arbitrate the grievance of Mrs. Starnes. Since that grievance was not filed until September 12, 1979, such claim of the plaintiff could not possibly have arisen until on or after that date. This action was commenced on March 26, 1980, which is well within any applicable statutory period of limitation.

■ Whether the grievance itself was filed timely is an entirely different matter which lies outside the jurisdiction of this Court. " * * * The question of whether a grievance is timely filed is a procedural question, which * * * is left to the arbitrator for decision. * * *" *Chambers v. Beaunit Corporation, supra*, 404 F.2d at 131[10].

The defenses of waiver, laches and estoppel do not appear capable of resolution on motion for summary judgment; they must be decided "* * * by conducting an evidentiary hearing. * * *" *Chattanooga Mailers v. Chattanooga News-Free Press*, C. A. 6th (1975), 524 F.2d 1305, 1313[5]. The remaining arguments go to the merits of the underlying dispute over seniority or to the procedural sufficiency of the grievance. Those are matters for the arbitrator, not the Court.

It results that the motion of the defendant for a summary judgment hereby is

DENIED. Rule 56(c), Federal Rules of Civil Procedure.

---

\* The defendant contends that this action is barred by either the 6-year period of limitation of T.C.A. § 28–309 or the 10-year period of T.C.A. § 28–310.