**AUTOMOTIVE, PETROLEUM AND ALLIED INDUSTRIES EMPLOYEES UNION, LOCAL NO. 618, Appellant,**

v.

**TOWN AND COUNTRY FORD, INC., Appellee.**

No. 82–1858.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1983.

Decided June 20, 1983.

Harris, Dowell, Fisher, McCarthy & Kaemmerer, John O. Harris, and Michael E. Kaemmerer, Chesterfield, Mo., for appellee.

George O. Suggs and Harry H. Craig, St. Louis, Mo., for appellant; Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., of counsel.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BENNETT,* Circuit Judge.

BENNETT, Circuit Judge.

Teamsters Local No. 618 (Union) appeals from the district court's[1] denial of its re-

---

1. The Honorable Diana E. Murphy presiding.

* The Hon. Marion T. Bennett, United States Circuit Judge for the Federal Circuit, sitting by designation.

1. The Hon. John F. Nangle, United States District Judge, Eastern District of Missouri.

quest for an order requiring Town and Country Ford (Employer) to submit a discharge grievance to the grievance procedures provided for in the Collective Bargaining Agreement negotiated by the parties. The district court held that the Union's alleged failure to submit a complaint to the Employer within five (5) working days from the notice of the discharge (as required by the Agreement) barred arbitration. *Automotive, Petroleum & Allied Industries Employees Local 618 v. Town & Country Ford, Inc.,* 543 F.Supp. 256 (E.D. Mo.1982). We are now called upon to decide whether that decision was on a question of "procedural" arbitrability. If so, under *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), it was properly an issue to be decided by the arbitrator and not the court. We hold that the district court exceeded its authority in deciding the above issue. Accordingly, we reverse.

*Background.*

The appellee-Employer is in the business of the sale and servicing of automobiles.[2] A number of its employees are represented by the Union for the purpose of collective bargaining. The Employer and the Union are parties to the current Collective Bargaining Agreement in effect for the period August 1, 1981, through July 31, 1984. The Agreement contains two provisions dealing with grievances. Article III, section 3, provides, in part:

Complaints regarding the layoff or discharge of members of the Union will be handled promptly in accordance with the grievance procedure herein provided. Such complaints must be filed in writing with the Company within five (5) working days from the date of notice of such layoff or discharge. Failure to present

such grievance within such period shall constitute a bar to further action.

Article VI, section 3, which sets out the grievance procedure, further provides:

Complaints regarding layoff or discharge will be handled promptly in accordance with the grievance procedure and must be filed in writing with the Union, copy to the employer, within five (5) working days from notice of such layoff or discharge.

On August 12, 1981, the Employer discharged C.L. Craft, a member of the Union, for insubordination. The district court found that the Union failed to serve the Employer timely with a copy of the grievance concerning the discharge of C.L. Craft. The court also found that the Employer has never been served with a written copy of the discharge grievance.[3]

Due to the Union's alleged failure to serve the Employer with a timely written copy of the grievance, the Employer's representative refused to hear the grievance at the September 18, 1981, grievance meeting at the Automobile Dealer's Association facility. The Union then brought this action in the district court to compel the Employer to arbitrate the dispute over the discharge of C.L. Craft.

The district court noted that courts have attempted to distinguish between substantive and procedural arbitrability in the determination of whether the parties to a collective bargaining agreement have excluded certain issues from the arbitration procedure. The court defined this distinction as follows:

The former concept [substantive arbitrability] is concerned with the question of whether the parties have contractually agreed to submit the issue to arbitration. It is generally held that this issue must be decided by the courts because a party may not be compelled to arbitrate an issue unless there was contractual con-

---

**2.** On February 1, 1982, the agency changed its name and dealership to Jung Chevrolet. This change did not affect the relationship of the Employer and the Union.

**3.** On appeal, the Union does not contend that these findings were clearly erroneous, but it does argue that there is an issue of fact as to whether timely service took place, and that this issue should be decided by the arbitrator, not by the district court.

sent. * * * In contrast, the concept of procedural arbitrability encompasses the question of whether a grievance procedure applies to a particular dispute and whether the parties have followed or excused the particular procedure. [543 F.Supp. at 258 (citation omitted).]

The court then noted that generally the arbitrator is called upon to decide questions of procedural arbitrability. The court, however, quoted the Supreme Court's statement in *Wiley*, 376 U.S. at 556, 84 S.Ct. at 918, that "[q]uestions concerning the procedural prerequisites to arbitration do not arise in a vacuum." From the foregoing, the district court concluded that:

these concepts cannot be applied in an absolutist fashion, nor do the concepts necessarily provide a workable analysis. The essential inquiry when determining the arbitrability of an issue should be the intent of the parties to the contract. [*Id.* at 258.]

Applying these principles to the case before it, the district court analyzed the Collective Bargaining Agreement in order to determine the intent of the parties. The court focused on the provisions of the agreement quoted earlier which state that the failure to submit a written grievance within the allotted time constitutes a bar to further action. The court found this language to be a limitation by the parties on the number of disputes that are subject to arbitration. The court concluded:

The existence of this language negates the conclusion that the parties regarded the requirement of filing a grievance with the company as a mere procedural formality to be dispensed with unilaterally. *See Philadelphia Printing Pressmen's Union v. International Paper Co.*, 648 F.2d 900 (3rd Cir.1981). Therefore, requiring the defendant to submit the Craft discharge grievance to the grievance procedures provided in the agreement would be in contravention of the plain language

of the agreement and the intent of the parties to the contract. [*Id.* at 259.]

The court therefore entered judgment for the defendant-Employer.

*Discussion.*

We agree with the appellant-Union that the distinction between substantive and procedural arbitrability is dispositive of the issue in this appeal. If, as the Union contends, the issue of its alleged noncompliance with the five-day notice requirement is a question of procedural arbitrability, then the Supreme Court's decision in *Wiley* would compel the conclusion that the district court erred in deciding this issue.

The court in *Wiley* stated: "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. at 557, 84 S.Ct. at 918. The Court gave two reasons why questions of procedural arbitrability are best left for the arbitrator to decide: (1) procedural questions are often intertwined with the merits of the dispute; and (2) the reservation of procedural issues for the courts provides an opportunity for serious delay and duplication of effort. *See id.* at 556–58, 84 S.Ct. at 917–18.

Since the Court's decision in *Wiley*, it cannot be seriously contended that purely "procedural" issues should be decided by the courts and not the arbitrator.[4] *See also International Union of Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 490, 92 S.Ct. 1710, 1712, 32 L.Ed.2d 248 (1972), where the Court cited its earlier holding in *Wiley*. The question before us, however, is whether the issue decided by the district court may be properly characterized as substantive or procedural. We believe that the lower court erred in its implicit holding that the notice requirement was an issue of "substantial" (i.e., substantive) arbitrability.

4. Prior to the Court's decision in *Wiley* the courts of appeals were divided on the issue of whether procedural issues should be decided by

the courts or the arbitrator. *See* 376 U.S. at 556 n. 12, 84 S.Ct. at 918 n. 12.

We agree with the Employer that there is no rational distinction between the facts in this case and the facts in *Philadelphia Printing Pressmen's Union 16 v. International Paper Co.*, 648 F.2d 900 (3rd Cir. 1981), where the Third Circuit held that the district court properly decided that the union's failure to reduce the grievance to writing, as required by the collective bargaining agreement, precluded an order to compel arbitration. In *Philadelphia Printing*, the union argued that *Wiley* mandated that the above issue was an area within the exclusive domain of arbitration. The court rejected the union's contention, finding that the following statement from *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962), quoted in *Wiley*, 376 U.S. at 547, 84 S.Ct. at 913, was dispositive:

> [W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.

From the foregoing, the court in *Philadelphia Printing* concluded:

> Although the parties could have provided that any dispute over whether there is an arbitrable dispute would be for the arbitrator, this was not done. Accordingly, the issue of arbitrability of the Axilrod matter remained in the court, where the Congress placed it by section 301 of the Labor Management Relations Act. [648 F.2d at 903 (footnote and citations omitted).]

The rationale for the court's holding in *Philadelphia Printing*, and the district court's holding in this case, is that if the union's failure to follow the grievance procedures set out in the agreement impacts on the determination of whether the dispute is subject to arbitration, then the matter is within the province of the court. We do not follow these holdings for the following reasons: (1) they ignore the distinction made in *Wiley* between substantive and procedural arbitrability; (2) they are contrary to our own precedent; and (3) they are against the great weight of authority in the other circuits.

In *Wiley*, the Court affirmed its earlier statement in *Atkinson* that the courts are empowered to decide the issue of whether a company was bound to arbitrate on the basis of the agreement between the parties. This statement, however, was preparatory to its discussion of the issue of whether the arbitration provisions of the collective bargaining agreement survived a merger. The Court had little difficulty in deciding that *this* issue was a question for the courts. 376 U.S. at 546–47, 84 S.Ct. at 912–13. Later in the decision, the Court decided the separate issue of the proper forum for questions of "procedural arbitrability." *Id.* at 555, 84 S.Ct. at 917. It is instructive to note what these issues were that the Court characterized as "procedural." In *Wiley* the company asserted that it had no duty to arbitrate because (1) the collective bargaining agreement set out a three-step grievance procedure, and the first two steps had not been followed (the third step being arbitration), *id.* at 555–56, 84 S.Ct. at 917; and (2) the union allegedly failed to comply with the following provision of the agreement: "Notice of any grievance must be filed with the Employer and with the Union Shop Steward within four (4) weeks after its occurrence or latest existence. The failure by either party to file the grievance within this time limitation shall be construed and be deemed to be an abandonment of the grievance." *Id.* at 556 n. 11, 84 S.Ct. at 918 n. 11. Despite the fact that the company asserted that the union's failure to follow these grievance procedures precluded arbitration, the Court held that once the parties are obligated to arbitrate the "subject matter" of the dispute, then the "procedural" questions (as outlined above) should be left to the arbitrator. *Id.* at 557, 84 S.Ct. at 918.

We find that there is no rational basis on which to distinguish between those issues which the Supreme Court in *Wiley* deemed to be procedural, and thus reserved for the arbitrator, and the issue in this case. The notice requirements, with the stated time limits, are substantially similar in wording

and import; i.e., in *Wiley* the provision provides that in the event that the procedure is not followed, the grievance is deemed "abandoned," and in the instant case, the provision provides that the failure to follow the procedure constitutes a "bar" to further action. Although there will undoubtedly be cases where the line between "substantive" arbitrability and "procedural" arbitrability will be very fine, we find that the issue in this case clearly falls within the latter classification.

Any doubt that the *Wiley* decision mandates reversal of the district court's decision is resolved by the decision of this court in *Bevington & Basile Wholesalers, Inc. v. Local 46 Int'l Union of United Brewery, Flour, Cereal, Soft Drink & Distillery Workers,* 330 F.2d 202 (8th Cir.1964). In the district court the company claimed that its refusal to arbitrate a grievance that arose over the discharge of an employee was not contrary to the terms of the agreement. As stated by the district court, "Specifically, defendant claims that 'plaintiff has failed to comply with the procedural requirements established by the said collective bargaining contract' in that the dispute was not submitted within three days of its occurrence." 213 F.Supp. 437, 438 (W.D. Mo.1963). The court noted that the request for processing of the grievance was clearly untimely. The district court then stated:

> On the facts of this case, there is no question about the breadth of the arbitration clause. What defendant requests us to pass on is the issue of whether on the merits, the arbitration is barred because of the union's failure to request that the grievance be processed within the clear time requirements of the contract. We quite agree that without more being shown to excuse the delay, the union's request was out of time. But there may be valid reasons why that might not foreclose the arbitration. [*Id.* at 438.]

The court concluded that "[t]he question involved in this case is but a part of the general grist of the mill that is regularly handled by arbitration proceedings in case after case throughout the United States." *Id.* at 438. The district court therefore granted the union's request for summary judgment and ordered the parties to proceed to arbitration.

On appeal, this court framed the issue before it as follows:

> We are confronted with the narrow question of whether the court or the arbitrator should determine whether the union has sufficiently complied with the procedural requirements of the collective bargaining agreement as to compel arbitration. [330 F.2d at 203.]

The court found the recent Supreme Court decision in *Wiley* to be dispositive of the issue, stating:

> Whatever uncertainty may have heretofore existed with respect to whether the court or the arbitrators should determine questions of 'procedural arbitrability' under the factual situation here existing has been resolved by the Supreme Court. *John Wiley & Sons, Inc. v. Livingston,* [376 U.S. 543] 84 S.Ct. 909 [11 L.Ed.2d 898]. [*Id.* at 204.]

This court therefore affirmed the judgment of the district court.

We find that the issue decided in *Bevington* and the issue before us in the instant case are indistinguishable. The only apparent discrepancy between the facts of these two cases is that here the Employer characterizes the issue as one of "substantive" arbitrability, while in *Bevington* it appears that the company conceded that the issue was procedural in nature. This "discrepancy," of course, has no bearing on our conclusion that *Bevington* is dispositive of the issue before us. *See also Local 198 United Rubber, Cork, Linoleum & Plastic Workers v. Interco, Inc.,* 415 F.2d 1208 (8th Cir.1969), where it was asserted that the union had not requested arbitration within the 90-day period fixed by the contract. The union asserted that it was excused from performance of this "useless" act, as Interco had in the past consistently rejected arbitration. The court stated: "In our view, this issue presents a procedural matter which under *John Wiley & Sons v. Livingston * * ***

should be resolved by arbitration." 415 F.2d at 1210 (citation omitted).

Numerous decisions in the other circuits support our holding that the issue before us is one of procedural arbitrability. In *Rochester Telephone Corp. v. Communication Workers,* 340 F.2d 237 (2d Cir.1965), the company asserted that the union's alleged failure to give notice of its intention to arbitrate a grievance within the 60-day time limit set out in the agreement relieved it of its duty to arbitrate the grievance. The court rejected the company's attempt to distinguish *Wiley,* and affirmed the district court's order compelling arbitration. In *Local 51 Int'l Brotherhood of Electrical Workers v. Illinois Power Co.,* 357 F.2d 916 (7th Cir.), *cert. denied,* 385 U.S. 850, 87 S.Ct. 78, 17 L.Ed.2d 79 (1966), the company asserted that the union had waived its right to arbitration under the collective bargaining agreement, as the agreement provided that the grievance procedure must be invoked within five days after the facts upon which the dispute is based first occurs or first becomes known. The union did not file its grievance until nine months after the dispute had become known. The court held that this was a procedural dispute which, under *Wiley,* was for the arbitrator to decide.

Similar decisions may be found in the First Circuit, *Trailways v. Amalgamated Ass'n of Street, Electric Railway & Coach Employees Div. 1318,* 343 F.2d 815, 818, (1st Cir.) *cert. denied,* 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965) ("The company's contention that the union failed to file the grievances relating to discharge of the employees within the requisite time limits, is without merit. It can raise that defense before the arbitrator but not before this court. *John Wiley & Sons v. Livingston,* supra."); the Fourth Circuit, *Tobacco Workers Int'l Local 317 v. Lorillard Corp.,* 448 F.2d 949, 953 (1971) ("We think the

District Court was clearly correct in deciding that the question of whether the grievances were timely filed was for the arbitrator.")[5]; the Fifth Circuit, *Palestine Telephone Co. v. Local 1506 Int'l Brotherhood of Electrical Workers,* 379 F.2d 234, 240–41 (1967); the Sixth Circuit, *Chambers v. Beaunit Corp.,* 404 F.2d 128, 131 (1968), ("The question of whether a grievance is timely filed is a procedural question, which, under the Supreme Court's holding in [*Wiley*] is left to the arbitrator for decision."); the Ninth Circuit, *Hospital & Institutional Workers Local 250 v. Marshal Hale Memorial Hospital,* 647 F.2d 38, 40–41 (1981); the Tenth Circuit, *International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Folding Carrier Corp.,* 422 F.2d 47, 49 (1970); and the D.C. Circuit, *Delta Air Lines, Inc. v. C.A.B.,* 574 F.2d 546, 550 (1978).

*Conclusion.*

We hold that the issue of whether the Union's alleged failure to satisfy the notice requirement barred arbitration is one of procedural arbitrability. Under the Supreme Court's decision in *Wiley,* this issue is reserved for the arbitrator, and not the district court. Under *Wiley,* the district court's role is limited to the determination of whether the parties are obligated to submit the "subject matter" of a dispute to arbitration. Here, the "subject matter" of the dispute is the discharge of an employee, C.L. Craft, not whether the Union complied with the grievance procedure set out in the agreement. The district court found that the Collective Bargaining Agreement "provides for a grievance procedure by which union members may make complaints concerning the discharge * * * of employees." 543 F.Supp. at 257. The parties are, therefore, obligated to submit the subject matter of the dispute to arbitration, and the dis-

---

**5.** In *Tobacco Workers,* the company argued that if the merits and the procedural questions were not intertwined, then the procedural questions should be decided by the courts and not the arbitrator. The court held that even if the

procedural and substantive questions were independent of each other, the procedural questions, under *Wiley,* were reserved for the arbitrator. *See* 448 F.2d at 953–54, and cases cited.

trict court exceeded its authority by deciding an issue of procedural arbitrability.[6]

Accordingly, after thorough consideration of the record and the parties' submissions, we reverse the judgment of the district court, and remand for entry of an order directing the parties to submit the discharge grievance to arbitration in accordance with the terms of the Collective Bargaining Agreement.

---

6. We offer no opinion on whether the Union's alleged noncompliance with the notice requirement bars a decision on the merits of the discharge. This is a question for the arbitrator. The arbitrator should also decide whether the notice requirement was in fact complied with.